THE STATE, EX REL. MASTERSON, A TAXPAYER, APPELLANT, *v.* OHIO STATE RACING COMMISSION ET AL., APPELLEES.

(No. 4941—Decided February 1, 1954.)

*Mr. George J. McMonagle, Mr. Robert E. Sweeney* and *Mr. Edward Beran,* for appellant.

*Mr. C. William O'Neill,* attorney general, *Mr. Hugh A. Sherer, Mr. John D. Connor, Mr. Charles E. Connor, Jr., Messrs. Gottfried, Ginsberg & Guren, Mr. Howard R. Hirsch* and *Mr. Charles A. Schwenker,* for appellees.

HORNBECK, J.  This is an appeal from a judgment for the defendants upon motion of defendants to strike

plaintiff's amended petition from the files and for judgment on the pleadings. The amended petition was filed upon leave taken after the court had sustained a demurrer to the original petition on the grounds (1) that the plaintiff has not the legal capacity to sue; and (2) that there is a defect of parties defendant.

The original and the amended petitions aver that the action is brought on the relation of the plaintiff, a taxpayer of the state of Ohio, on behalf of the state and all its citizens and taxpayers; that the plaintiff made demand upon the Attorney General of the state of Ohio to bring the proceedings, but that he failed and has refused to do so. He further avers that the defendants, the members of the Ohio State Racing Commission, will, unless restrained, unlawfully issue a permit to defendants Aurora Downs, Inc., and Cleveland Raceways, Inc., for the conducting of a lottery on the same date or dates, at tracks within 30 miles of each other. The petitions set out Section 6 of Article XV of the Constitution of Ohio, which provides that "lotteries, and the sale of lottery tickets, for any purpose whatever, shall forever be prohibited in this state."

Plaintiff then continues, averring that the commission's permits authorizing permittees to conduct the pari-mutuel or certificate system of wagering are in violation of the quoted section and article of the Ohio Constitution, and of Sections 1079-1, 1079-7, and 1079-8, General Code, which are set out in their entirety, and particularly Section 1079-7, General Code, which, among other things, provides:

"No permit shall be issued under this act authorizing horse racing at any place, track or enclosure * * * so as to permit horse racing on the same date or dates at more than one track in one county or on tracks within thirty miles of each other * * *."

It is specifically averred that the defendant commis-

sion violated the quoted portion of this section by issuing permits to the named defendant racing associations.

It is further averred that public funds, namely taxpayers' funds, are expended from the general fund of the state of Ohio in the particulars set out in the petition. It is further averred that the defendant commission not only has issued, but will hereafter issue, permits to the defendant racing associations in violation of the constitutional prohibition and the specific terms of the section of the General Code hereinbefore quoted, and that they will thereby cause illegal expenditures of public funds of the state of Ohio in the particulars theretofore set out. The prayer is for specific relief against the issuance of permits to conduct the parimutuel or certificate system of wagering to the defendant racing associations and to prohibit the issuance to them of such certificates at race tracks within 30 miles of each other on the same calendar date or dates.

The entry sustaining the demurrer is general, from which it may be concluded that the court found both grounds of the demurrer well taken. However, from the opinion of the trial judge, it is obvious that the demurrer was sustained upon the first ground thereof, namely, incapacity of the plaintiff to sue. The plaintiff contends here that there is also a second question for determination on this appeal, namely, does the amended petition of the plaintiff state a cause of action?

The plaintiff urges that any taxpayer of Ohio has a right to maintain a taxpayers' action to enjoin the illegal expenditure of public funds of the state of Ohio. The original defendants, others who have been made defendants since the action was instituted, and *amici curiae*, contend that the test which must be applied in determining whether or not the plaintiff had the capacity to maintain the action is: Was he or will he be

injured as a taxpayer if the acts of which he complains in his petition are not enjoined?

Without elaborating on the Horse Racing Act under which the defendant racing commission is empowered to do the acts complained of in the petition, suffice to say that, if the funds in the hands of the state of Ohio may be said to be public funds, there is little or no probability that any taxpayer will suffer any special damages whatever should the defendants commit the acts of which the amended petition complains. Injury, other and different from that suffered by the public, has generally been held to be a prerequisite to capacity to maintain a taxpayer's suit. 8 Ohio Jurisprudence, 178, Section 75; 16 Corpus Juris Secundum, 157, Section 76; *Fischer* v. *City of Cleveland,* 42 Ohio App., 75, 181 N. E., 668; *State, ex rel. Masterson,* v. *Ohio State Racing Commission* (Ohio App.), 115 N. E. (2d), 474; *Leasure* v. *Taylor,* 32 Ohio Law Abs., 395; *Russell* v. *State Bridge Commission,* 16 Ohio Opinions, 399, 406; *Harnett* v. *Edmonston, Dir.,* 44 Ohio App., 304, 185 N. E., 426; *State, ex rel. Johnson, a Taxpayer,* v. *Washburn,* 30 Ohio Opinions, 435.

There is then presented the broader question, namely, the right of the taxpayer to maintain an action to enjoin the wrongful expenditure of public funds where such funds were not raised by taxation but, as here, by permit fees paid by the racing associations in compliance with the provisions of the Horse Racing Act.

The case of *Shipley* v. *Smith,* 45 N. M., 23, 107 P. (2d), 1050, 131 A. L. R., 1225 (and annotated at page 1230), holds, in the first A. L. R. headnote, that:

"A taxpayer has sufficient interest to enable him to sue to restrain a payment of public moneys under a contract alleged to be illegal for noncompliance with a statute requiring advertising for bids, although such moneys were received as a donation instead of being derived from taxation."

The A. L. R. annotation cites holdings of courts from seven states which have passed on the question, and it is stated that:

"The right of a taxpayer to maintain an action to enjoin the wrongful expenditure of public funds, where such funds were not raised by taxation, has been denied in the majority of cases considering such a question."

From Ohio, the case of *Warm, a Taxpayer,* v. *City of Cincinnati,* 57 Ohio App., 43, 11 N. E. (2d), 281, is cited in support of the majority rule.

In that case, neither the state of Ohio nor any department of the federal government was made a party to the action and it was in such situation that the taxpayer had not a sufficient interest in tax money in the United States treasury to serve as a predicate for an action to enjoin its expenditure.

Appellant cites *Horvitz* v. *Sours, Dir.,* 74 Ohio App., 467, 58 N. E. (2d), 405, to the effect that the plaintiff taxpayer, without regard to his motive, had the right to maintain the suit. That is a sound statement but there was no doubt as to the capacity of the plaintiff to maintain the action which was to enjoin the expenditure of public funds upon an alleged illegal contract.

Authority to maintain this action must be found, if at all, upon the pronouncement in the first paragraph of the syllabus of *Green* v. *State Civil Service Commission,* 90 Ohio St., 252, 107 N. E., 531:

"A taxpayer may maintain an action to enjoin public officers or a public commission from the commission of acts in excess of legal authority, which contemplate the expenditure of public money."

If that case is controlling, then, clearly, the taxpayer has conformed to one of the requisites by alleging that the defendants are committing acts in excess of their legal authority. There remains the question, did these acts contemplate the expenditure of

public money? This requires an examination of the Horse Racing Act, and particularly Section 1079-10, General Code, which, so far as pertinent, provides:

"The commission shall be charged with the duties of enforcing the provisions of this act, and may incur such expenses as shall be necessary, providing, however, that such expenses shall not exceed the revenues derived from the fees and taxes as herein provided."

It then continues with the requirement that all moneys due the state of Ohio under the provisions of the act shall be paid to the secretary of the commission and by him paid weekly into the state treasury to the credit of a separate fund to be known as "the State Racing Commission Fund." The fund shall be drawn on only for the purposes of this act; that when, and only when, the amount of revenue paid into said fund exceeds the amount appropriated therefrom for the uses and purposes of the State Racing Commission for said year shall the excess be transferred to the General Revenue Fund. Then, this language:

"All expenses incurred by the commission shall be paid on vouchers signed by the chairman and secretary of the commission, and upon warrant of the Auditor of State by the State Treasurer out of the separate fund herein provided."

It is thus clear that, by specific provision, the fund from which the expenditures are to be made against which complaint is urged is a special fund and the payments set forth in the petition will be made from this fund and not the general fund.

An analogous situation was presented in *State, ex rel. Stearns*, v. *Olson, Treas.*, 43 N. D., 619, 175 N. W., 714, wherein in the first paragraph of the syllabus, it is said:

"Under the Workmen's Compensation Act the state treasurer is made custodian of the fund which is accumulated in the manner prescribed by law for the

payment of claims allowed by the workmen's compensation bureau. *Held*, that such fund is a special, and not a public, fund.''

It is our conclusion that the plaintiff here had not the legal capacity as a taxpayer to maintain the action as a proper party plaintiff, either as one specially affected by the expenditure of the money by the defendant officers or because the acts of which complaint was made, if illegal, contemplate the expenditure of public money.

The court did not err in sustaining the demurrer to the petition and in entering judgment for the defendants on the amended petition. We pass specifically on the first ground of the demurrer only. We do not hold that there is a defect of parties defendant nor consider the sufficiency of either petition to state a cause of action.

*Judgment affirmed.*

WISEMAN, P. J., and MILLER, J., concur.